[Cite as *State v. Marshall*, 2014-Ohio-4677.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100840**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHARLES MARSHALL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-97-349190-A

**BEFORE:** Rocco, J., S. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 23, 2014

**ATTORNEY FOR APPELLANT**

Office of the Ohio Public Defender

BY: Francisco E. Lüttecke
Assistant State Public Defender
250 East Broad Street – Suite 1400
Columbus, Ohio   43215

**ATTORNEYS FOR APPELLEE**

Michael DeWine
Ohio Attorney General

BY: Paul L. Scarsella
Senior Assistant Attorney General

Jocelyn S. Kelly
Associate Assistant Attorney General
Ohio Attorney General's Office
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215

KENNETH A. ROCCO, J.:

{¶1}   Defendant-appellant Charles Marshall appeals his convictions after he pled no contest to one count of involuntary manslaughter and one count of aggravated robbery, arising out of a December 22, 1996 robbery of a Papa John's pizza shop in Garfield Heights and the fatal shooting of its store manager.   Marshall contends that the trial court erred and acted unreasonably in declaring a mistrial after it was discovered that a witness statement, which had not been admitted into evidence, was improperly submitted to the jury.   Marshall contends that his subsequent convictions violate the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.   For the reasons that follow, we hold that the trial court exercised sound discretion in declaring a mistrial and that the prohibition against double jeopardy does not bar Marshall's convictions.

**Procedural Background**

{¶2}   On March 31, 1997, the Cuyahoga County Grand Jury indicted Marshall on one count of aggravated murder with two capital specifications, three counts of aggravated robbery, and three counts of kidnapping.   Each of the counts also included firearm specifications.   Marshall pled not guilty to the charges against him, and in September 1997, the case proceeded to a jury trial.   The jury found Marshall guilty on all counts and all specifications.

{¶3} On October 9, 1997, the jury recommended that Marshall be sentenced to death for his conviction for aggravated murder, finding that the aggravating

circumstances outweighed the mitigating factors beyond a reasonable doubt. On October 10, 1997, the trial judge accepted the jury's recommendation and orally pronounced Marshall's death sentence on the aggravated murder conviction. The trial judge also sentenced Marshall to 58 years in prison on the other counts of which he was convicted (nine years on each of the aggravated robbery and kidnapping counts, to be served consecutively, along with consecutive sentences, totaling four years, on the gun specifications). However, the sentence was never journalized.

{¶4} At some point after the trial judge orally pronounced Marshall's sentence and before a final order or journal entry was prepared, the trial judge realized that the jury had not been properly instructed on the option of sentencing Marshall to life in prison without the possibility of parole.[1] As a result, on October 14, 1997, the trial judge vacated the death sentence and recused himself from further proceedings in the case. The case was then reassigned to a new trial judge.

{¶5} In December 1997, the new trial judge (the "second trial judge") granted Marshall's motion for a new trial. In the fall of 1998, a new jury was empaneled. During jury selection, the state appealed various pretrial rulings by the trial court, excluding certain evidence that the state sought to admit at trial. This court reversed the trial court's evidentiary rulings and remanded the case. *State v. Marshall,* 136 Ohio

---

[1]Both the state and defense agreed that an error had been made in the sentencing phase and that the jury should have been instructed regarding the option of sentencing Marshall to life in prison without the possibility of parole.

App.3d 742, 737 N.E.2d 1005 (8th Dist.2000).   The case proceeded to trial a second time on February 1, 2001.

{¶6} During Marshall's first trial, Tony Haynes, a longtime friend of Marshall, testified on behalf of the state.   Haynes testified that Marshall told him that he had committed the December 22, 1996 Papa John's robbery along with an accomplice, and that he had shot the store manager during the robbery.   Haynes further testified that after receiving this information, he contacted Detective Paul Mazzola, one of the Garfield Heights police officers involved in investigating the Papa John's robbery, and gave a written statement to police detailing Marshall's admission.   The trial judge in the first trial allowed Haynes to read his written statement to the jury, which was marked for identification purposes as state's exhibit No. 37.   The statement, however, was not admitted into evidence.

{¶7} During the second trial, Haynes did not testify.   Although the state indicated, in its opening statement, that it expected Haynes to testify regarding a conversation Haynes had had with Marshall shortly after the incident, in which Marshall admitted killing the store manager and described, in detail, the circumstances surrounding the shooting, the state was unable to bring Haynes in to testify.[2]   When the state realized,

---

[2] Cleveland police Sergeant Marvin Cross testified that the reason the state was unsuccessful in bringing Haynes in to testify was due to department overtime rules.   He testified that although a bench warrant had been obtained to secure Haynes's appearance to testify at trial, officers could not remain on surveillance until 1:00 or 2:00 a.m., at the time and place where Haynes was expected to appear, because "department rules would not allow us to do that, not for a witness."   He further testified that if Haynes had been a suspect, "then the rules would definitely be a lot different" and that they would have been allowed to expend the resources necessary to track him down.

during the course of the second trial, that it would be unable to produce Haynes as a live witness, the state sought to have Haynes's testimony from first trial read into the record, arguing that Haynes's prior trial testimony was admissible as the former testimony of an unavailable witness pursuant to Evid.R. 804(B)(1). Following an evidentiary hearing on the issue conducted outside the presence of the jury, the trial court ruled that the state had not made a sufficient showing of unavailability and that Haynes's prior trial testimony was, therefore, inadmissible. Although Haynes did not testify, Detective Mazzola testified that he met with and took a written statement from Haynes. Unlike in the first trial, however, Haynes's statement was not read to the jury. His statement was not admitted into evidence, and state's exhibit No. 37 was "withdrawn" by the state.

{¶8} The jury began its deliberations in the second trial on February 14, 2001. On the morning of February 16, 2001, the jury foreman delivered a note to the bailiff containing the following question: "We, the jury, have an exhibit in our possession that was referenced during the trial but never introduced as evidence. (Tony Haynes['s] statement, State Exhibit 37.) Is this acceptable by the law?" The note was given to the bailiff along with a copy of Haynes's statement, which bore an original red state's exhibit sticker, numbered 37. The bailiff delivered the note and exhibit to the trial judge.

{¶9} After consulting with other judges, the trial judge called in counsel for the parties. The trial judge read the jury's question to counsel. The trial judge reminded the parties that the statement of Tony Haynes had been referenced three times during the trial and that the court had made specific rulings with regard to the statement during the trial.

She then asked, "Do I hear a motion from the defense?" Defense counsel did not respond. Instead, the following exchange occurred:

[PROSECUTOR]: I don't know how that got in there, Judge.

THE COURT: Well, we will be having a hearing on that. I'm declaring a mistrial, and I will entertain motions. We will have a hearing in two weeks.

[MARSHALL'S COUNSEL]: Thank you, your honor.

THE COURT: All right. Prosecutorial misconduct is the reason for the mistrial.

Although the trial judge had indicated that a hearing would be held to determine how the exhibit got into the jury room, no hearing was held, and no motions related to the trial court's declaration of a mistrial or any other response or objection to the trial court's declaration of a mistrial was filed by either party.

{¶10} A week later, on February 23, 2001, the trial court's declaration of a mistrial was journalized. The February 23, 2001 journal entry omitted any reference to "prosecutorial misconduct" as the basis for the mistrial and instead stated that a mistrial was declared because "out-of-court statement of Tony Haynes (State's Exhibit 37) [was] not properly before the jury." The jury panel was discharged. The second trial judge then recused herself from the case.

{¶11} Around this same time, the state filed an application to appoint a special prosecutor to investigate the circumstances under which the statement of Tony Haynes had been submitted to the jury. The presiding/administrative judge for the Cuyahoga

County Court of Common Pleas promptly granted the application, and the investigation began on February 23, 2001.

{¶12} In March 2001, the case was reassigned to a third trial judge. On June 4, 2001, the special prosecutor issued a report, detailing the results of his investigation. Although there was strong circumstantial evidence[3] that one of the prosecutors may have been responsible for improperly submitting the statement of Tony Haynes to the jury, the special prosecutor indicated that there was "no direct evidence" that the prosecutor had "engaged in any misconduct" and insufficient evidence "to sustain a criminal charge" against him.[4]

{¶13} On March 21, 2002, Marshall filed a pro se "motion to request dismissal on grounds of former jeopardy," arguing that (1) manifest necessity had not been established to support the second trial judge's sua sponte declaration of a mistrial and (2) double jeopardy should preclude further prosecution of the case against him based on the second trial judge's initial statement that a mistrial was warranted due to prosecutorial misconduct. On May 24, 2002, Marshall's counsel filed a second motion to dismiss the case on double jeopardy grounds, arguing that the state should be barred from retrying the

---

[3] As outlined in the special prosecutor's report, the circumstantial evidence suggesting that one of the prosecutors may have been responsible for the statement of Tony Haynes getting to the jury included evidence that the prosecutor was in a position to place the statement into the box of exhibits submitted to the jury, his version of the relevant events was inconsistent with that given by other witnesses, he failed a polygraph examination, and he made "troubling and arguably incriminating statements" after he failed the polygraph examination.

[4] On May 22, 2001, the matter was presented to the grand jury, but no charges were filed.

case against Marshall because (1) neither Marshall nor his attorneys[5] had requested a mistrial or were consulted prior to the trial judge's sua sponte declaration of a mistrial and (2) one of the prosecutors had engaged in misconduct intended to provoke a mistrial by improperly submitting the statement of Tony Haynes to the jury. After a hearing, the trial court denied the motion, concluding, based on the special prosecutor's report, that there was "[n]o evidence * * * that any prosecutor engaged in misconduct * * * [n]or * * * any evidence * * * that any prosecutor acted with an intent to cause a mistrial in this case."[6] As such, the trial court held, "the Double Jeopardy Clause of the Fifth Amendment is not triggered to bar a retrial in this matter."[7]

---

[5] In the second trial, the trial court had granted Marshall's request to act as pro se co-counsel, along with his two attorneys.

[6] Although the trial court did not specifically address the manifest necessity issue in its January 15, 2003 judgment entry denying Marshall's motion to dismiss, the issue was argued at the hearing on the motion.

[7] Marshall did not file a direct appeal of the order denying his motion to dismiss. At the time, it was believed that the trial court's denial of a motion to dismiss on double jeopardy grounds was not a final, appealable order. *See State v. Crago,* 53 Ohio St.3d 243, 244-245, 559 N.E.2d 1353 (1990) (holding that the denial of a motion to dismiss on double jeopardy grounds was not a "final order" within the meaning of R.C. 2953.02 and 2505.02 and that, therefore, a defendant could not appeal the denial of a motion to dismiss based on double jeopardy grounds until after the trial was concluded), *overruling State v. Thomas,* 61 Ohio St.2d 254, 400 N.E.2d 897 (1980); *Wentzel v. Enright,* 68 Ohio St.3d 63, 623 N.E.2d 69 (1993), paragraph two of the syllabus; *see also Marshall v. State,* 443 F.Supp.2d 911, 915 (N.D.Ohio 2006) (observing that "under Ohio law, the denial of a motion to dismiss based on violation of the Double Jeopardy Clause is not a final appealable order"). The law on that issue has since changed. In *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, decided after Marshall filed his notice of appeal in this case, the Ohio Supreme Court once again reversed course. Construing the General Assembly's 1998 amendments to R.C. 2505.02 — which it determined "is more extensive than the language * * * construed in *Crago*" — the court concluded that an order denying a motion to dismiss on double jeopardy grounds is a final appealable order. *Id.* at ¶ 40, 60. The court reasoned that "an accused would not be afforded a meaningful

{¶14} On April 9, 2003, Marshall filed, pro se, a third motion to dismiss on double jeopardy grounds, raising many of the same arguments set forth in the earlier motions, including that the trial court had abused its discretion in sua sponte declaring a mistrial, and that his due process rights had been violated because he was not present when the trial judge declared a mistrial, the trial judge declared a mistrial without giving defense counsel an opportunity to be heard on the issue, and the trial judge failed to consider less drastic alternatives, such as a curative instruction, prior to declaring a mistrial. On July 3, 2003, the trial court denied the motion based on res judicata, referencing its prior ruling on the motion to dismiss filed by Marshall's counsel.

{¶15} In October 2003, Marshall filed a petition for a writ of habeas corpus with the United States District Court for the Northern District of Ohio. This case was stayed until final disposition of the habeas petition. In his habeas petition, Marshall raised several issues, including that the commencement of a third trial violated double jeopardy because the trial court's mistrial declaration was not supported by manifest necessity. The district court denied the petition, finding that, under the circumstances, the trial judge had "acted rationally and responsibly" in granting a mistrial, that the trial court's grant of a mistrial was supported by manifest necessity, and that Marshall had impliedly consented to the mistrial by failing to object to the trial court's declaration of a mistrial either when the trial judge orally announced her decision to declare a mistrial or in a subsequent

review of an adverse decision on a motion to dismiss and discharge on double-jeopardy grounds if that party must wait for final judgment as to all proceedings in order to secure review of the double-jeopardy decision." *Id.* at ¶ 59.

written submission to the court. *Marshall v. State,* 443 F.Supp.2d 911 (N.D.Ohio 2006). Marshall did not appeal the denial of his habeas petition.

{¶16} The stay was lifted in August 2007, and numerous pretrial proceedings followed. After several trial settings had come and gone, on November 25, 2013, Marshall pled no contest to an amended charge of involuntary manslaughter, without any specifications, and one count of aggravated robbery, also without specifications. In exchange for his no contest pleas, the state agreed to dismiss the remaining counts and to recommend an agreed sentence of 16 years (ten years on the involuntary manslaughter charge and six years on the aggravated robbery count, to be served consecutively) with credit dating back to his original arrest in 1997. The agreed recommended sentence was to be served concurrently to sentences Marshall was then serving in other cases. With regard to his no contest pleas, Marshall agreed to stipulate to the information contained in all the prior trial transcripts. The trial court found Marshall guilty of the charges to which he pled, accepted Marshall's pleas as having been knowingly, intelligently, and voluntarily made, and thereafter sentenced Marshall to the agreed recommended sentence of 16 years in prison. Marshall's convictions and sentences were journalized on December 4, 2013.

{¶17} On January 3, 2014, Marshall appealed the judgment entry of conviction, presenting the following assignment of error for review:

> The trial court erred and acted unreasonably when it assumed manifest necessity and declared a second mistrial in Mr. Marshall's case, thus violating the Double Jeopardy Clause and depriving Mr. Marshall of his right to have his trial completed by a particular tribunal.

**Legal Analysis**

{¶18} Marshall argues that there was no "manifest necessity" for a mistrial based on the improper submission of the statement of Tony Haynes to the jury and that the trial court's sua sponte declaration of a mistrial in the second trial was an abuse of discretion. Marshall further argues that because the trial court abused its discretion in declaring a mistrial, his reprosecution was barred by the Double Jeopardy Clauses of the United States Constitution and the Ohio Constitution.

{¶19} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution protect a criminal defendant against repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 14.     The policy underlying this protection is to ensure that

> "* * * the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), quoting *Green v. United States*, 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199.

{¶20} The constitutional protection granted a criminal defendant under the Double Jeopardy Clause also encompasses the defendant's "'valued right to have his trial

completed by a particular tribunal.'"  *Oregon* at 671-672, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).  This right, however, is not unlimited.

In some instances, the defendant's right to have his case resolved by a particular tribunal must "be subordinated to the public's interest in fair trials designed to end in just judgments."  *Wade* at 689; *see also Arizona v. Washington*, 434 U.S. 497, 515, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ("Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgments' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled.").  Thus, the Double Jeopardy Clause does not bar reprosecution in every case.

{¶21} Where a defendant objects to a mistrial, the defendant may be retried if "manifest necessity" exists for the mistrial, *State v. Gunnell,* 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 25, or if "'the ends of public justice would otherwise be defeated.'"  *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900, quoting *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981), citing *Washington*, 434 U.S. at 505, 98 S.Ct. 824, 54 L.Ed.2d 717.[8]  "Manifest necessity" means a "high degree" of necessity must exist before a mistrial may properly be declared.  However, it does not

---

[8] Notwithstanding the prohibition against double jeopardy, a defendant may also generally be retried if the defendant requests or consents to a mistrial, unless the defendant's request for a mistrial is precipitated by prosecutorial misconduct intended to provoke a mistrial.  *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 36-37, citing *Oregon* at 676, and *Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900.  Although Marshall argued below that the state was prohibited from reprosecuting him because the February 2001 mistrial was the result of prosecutorial misconduct designed to provoke a mistrial, he has abandoned that argument on appeal.

require a showing that a mistrial was "absolutely necessary" or that there was no other alternative but to declare a mistrial. *Washington* at 511.

{¶22} There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial: "[T]he manifest-necessity standard 'abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" *State v. Gunnell,* 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 27, quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, taking into account all the relevant circumstances. This approach is "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial." *Glover*, 35 Ohio St.3d at 19, 517 N.E.2d 900. However, "'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Gunnell* at ¶ 26, quoting *United States v. Perez*, 22 U.S. 579, 580, 6 L.Ed. 165 (1824). "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected * * * ." *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus. The granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶23}** When a mistrial is premised on the prejudicial impact of improper evidence, the trial judge's evaluation of the possibility of juror bias is entitled to "great," but not unlimited, deference by a reviewing court. *Gunnell* at ¶ 28; *Ross v. Petro,* 515 F.3d 653, 661 (6th Cir.2008); *Washington* at 514. The trial court's mistrial declaration is reviewed to determine if the trial judge exercised "sound discretion in determining whether juror bias existed and whether it could be cured." *Gunnell* at ¶ 29.

As the Ohio Supreme Court explained in *Gunnell*:

> [A] trial judge's determination of possible juror bias should be given great deference only upon the appellate court's satisfaction that the trial judge exercised sound discretion in determining whether juror bias existed and whether it could be cured. * * * [T]he mere specter of bias is [not] a manifest necessity that warrants mistrial. * * * [A]lthough a trial judge's determination of juror bias is entitled to great deference, it must be predicated on the judge's proper discretion in hearing the case. Mere supposition, surmise, and possibility of prejudice are not sufficient.

*Id.* at ¶ 29, 31.

**{¶24}** In determining whether a mistrial is necessary, the exercise of "sound discretion" generally requires that a trial judge allow both parties to state their positions on the issue, consider their competing interests, and explore reasonable alternatives, if any, before declaring a mistrial. *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 44, citing *Ross, supra.* A trial court must act "rationally, responsibly, and deliberately" in determining whether to declare a mistrial. *Gunnell* at ¶ 33. However, a trial court's failure to make an explicit finding of "manifest necessity" does not render a mistrial declaration invalid, as long as the record provides sufficient justification for the ruling. *Washington* at 516-517.

{¶25} Marshall claims that the trial court's declaration of a mistrial was nothing more than a "kneejerk reaction regarding the potential effect of an improperly submitted exhibit" and that the trial court failed to exercise sound discretion in declaring a mistrial in this case because it (1) acted "abruptly rather than deliberately," declaring a mistrial without hearing the opinions of the parties as to the propriety of a mistrial and without considering less drastic options to a mistrial, and (2) declared a mistrial "based on an assumption of manifest necessity" without conducting a "meaningful inquiry into the issue of juror bias." Specifically, Marshall complains that the trial judge did not question any of the jurors, prior to her mistrial declaration, to determine (1) which jurors examined the statement of Tony Haynes (i.e., whether it was one or all of them), (2) the depth of that examination,[9] and (3) whether a less drastic alternative, such as a curative instruction, might have enabled the jury to continue to decide the case (i.e., whether the

---

[9] The special prosecutor's report refers to the improperly submitted exhibit as having been "reviewed by" the jury. According to the report, the statement was first noticed by a juror on February 15, but the issue was not immediately brought to the court's attention. Instead, the jury continued to deliberate the remainder of the afternoon and presented its question to the court the following morning. There is nothing in the record that indicates what, if any, information the trial judge had regarding the timing and circumstances surrounding the jury's discovery of the statement of Tony Haynes at the time she declared a mistrial. According to the special prosecutor's report, the jurors were interviewed as part of his investigation. The information he reports regarding the timing and circumstances of the jurors' discovery of the statement of Tony Haynes was thus presumably obtained during those interviews and unknown to the trial judge at the time she declared a mistrial. In evaluating the trial judge's exercise of discretion in declaring a mistrial, however, we must confine our review to the record as it existed at the time the trial court declared a mistrial, considering only those facts known to the trial court at the time. *See, e.g., Ross,* 515 F.3d at 667 ("An appellate court is hardly at liberty to use the 20/20 vision of hindsight in evaluating whether a mistrial decision represented an exercise of sound discretion, but must, in the exercise of due deference, necessarily confine its review to the facts known to the trial judge when the mistrial was declared.").

jurors could reasonably be expected to disregard what, if anything, they examined if they were to continue their deliberations). Marshall maintains that *State v. Gunnell,* 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, mandates such an inquiry in this case. We disagree.

{¶26} In *Gunnell*, the Ohio Supreme Court considered whether a juror's outside research, i.e., a handwritten definition of the word "perverse" and an instruction on "involuntary manslaughter" that the juror had printed off the internet, constituted grounds for a mistrial. *Gunnell* at ¶ 9-10. The materials had been intercepted by the bailiff when the juror arrived in the morning to continue jury deliberations and had not been shared with other jurors. *Id.* at ¶ 8. After learning of the juror's possession of this information, the trial judge conducted a brief hearing during which the trial judge first informed the parties of the issue that had developed regarding the juror's outside research and then proceeded to question the juror regarding her research, including what information she had found, why she had looked for it, and whether she had shared that information with any other jurors. *Id.* at ¶ 11. The trial court did not, however, question the juror to determine whether any prejudice or bias was created by the information or whether the juror could disregard it. *Id.* at ¶ 14, 32. A divided Ohio Supreme Court held that because the trial court failed to conduct "any meaningful inquiry" to "ascertain the scope of the prejudice, if any, to the [defendant] before determining that the juror could not be rehabilitated and that a mistrial was necessary," the trial court "did not soundly exercise" its discretion to declare a

mistrial, manifest necessity did not exist, and the Double Jeopardy Clause barred reprosecution of the defendant. *Id.* at ¶ 37-40. This case, however, is quite different.

{¶27} First, as to the "abruptness" with which the trial judge allegedly declared a mistrial in this case, although the trial judge acted quickly upon learning that the statement of Tony Haynes had been improperly submitted to the jury, this is not a case in which the parties were afforded no opportunity to state their respective positions. The record reflects that the trial judge elicited the opinions of the parties and also consulted with other judges prior to sua sponte declaring a mistrial. Neither of the parties raised any objection to the trial judge's oral declaration of a mistrial or requested any additional time to consider the issue. Although the trial judge indicated that she would "entertain motions," neither party filed any motions or any other written submissions with the trial court regarding the issue.[10] The record reflects that after the trial judge orally declared a mistrial based on "prosecutorial misconduct," she continued to consider the issue, ultimately ruling, in her February 23, 2001 journal entry, that a mistrial was warranted because the "out-of-court statement of Tony Haynes (State's Exhibit 37) [was] not properly before the jury."

{¶28} Second, although it may have been preferable for the trial court to have conducted some inquiry of the jurors to determine the timing and circumstances that led

---

[10]Although Marshall criticizes the trial judge for not following through with a hearing to determine how the statement of Tony Haynes got into the jury room, given that neither party filed any motions or objections, we do not believe the trial court acted unreasonably in failing to hold a hearing on the issue.

to the jury's discovery of the statement of Tony Haynes, the extent of the jurors' examination of the statement, and how the jurors were affected by it, we cannot say that, under the particular circumstances here, the trial court's failure to do so constituted a failure to exercise "sound discretion" or otherwise precluded a finding of manifest necessity. A mistrial is appropriate where "'erroneously admitted evidence is of an exceptionally prejudicial character, such that its withdrawal from consideration by the jury cannot be expected to remove the harm.'" *United States v. Carr,* 5 F.3d 986, 993 (6th Cir.1993); *see also State v. Patterson*, 188 Ohio App.3d 292, 2010-Ohio-2012, 935 N.E.2d 439, ¶ 47 (2d Dist.) (although court was "well intentioned" in conducting voir dire of individual jurors regarding examination of exhibit that was improperly submitted to the jury, "the emphasis on [the exhibit] may have only served to highlight its incendiary impact and seared into the minds of the jurors the fact that they should not have received, read, and discussed it").

{¶29} Unlike the improper material at issue in *Gunnell,* the potential prejudice to Marshall resulting from the jury's examination of the statement of Tony Haynes is obvious and compelling. In this case, all of the jurors — not just a single juror — were potentially impacted by the information improperly submitted to them. There is no dispute that all of the jurors were aware that the exhibit — which had not been admitted into evidence at trial — had been placed into the box of exhibits delivered to the jury deliberation room.[11]

_____

[11]The statement of Tony Haynes was apparently not the only item improperly submitted to the

{¶30} Furthermore, the exhibit that was improperly submitted to the jury in this case was not just any exhibit. It was a statement detailing Marshall's confession to murder. It was qualitatively different from other evidence the state had presented at trial with respect to the aggravated murder charge and arguably filled a significant gap in the state's case — i.e., credible evidence that Marshall was the shooter — that existed after Tony Haynes failed to testify at trial and the trial court precluded the state from introducing Haynes's prior trial testimony. None of the eyewitnesses who testified at trial, who were present at the Papa John's shop at the time of the robbery, actually saw the shooting. Although Marshall's accomplice, Robert Martin, identified Marshall as the shooter in a videotaped statement played for the jury,[12] it is likely that minimal weight would have been given to his identification, as a codefendant pointing a finger at an accomplice, particularly given the inconsistences in the statements Martin gave to the police and other evidence offered at trial calling his credibility into question. Although Tony Haynes's brother, Richard Haynes, testified that Marshall admitted to him, shortly after the incident, that he had committed the Papa John's robbery, Richard Haynes also testified that when he asked Marshall whether he committed the murder, Marshall did not respond. Even assuming some or all of the jurors did not examine the exhibit in depth

---

jury in this case. According to the special prosecutor's report, after the mistrial was declared, the court reporter went to the jury room to collect various items and discovered two additional written statements from other state witnesses, bearing red state exhibit stickers, that had not been admitted into evidence.

[12] Martin's videotaped statement to police was admitted into evidence after Martin refused to testify at trial, asserting his Fifth Amendment right against

before the court was notified that the statement had been improperly submitted to the jury, based on what the jurors had heard about the statement and Tony Haynes during the trial, they would have been generally aware of its prejudicial subject matter.

{¶31} Third, although there is nothing in the record that suggests that the trial judge had a discussion with the parties regarding any less drastic alternatives to declaring a mistrial,[13] this is not a situation in which an adequate alternative to declaring a mistrial is readily apparent. No alternatives — other than a curative instruction — have been suggested. However, "curative instructions may not always sufficiently eliminate the prejudicial impact of highly inflammatory evidence." *State v. Westwood*, 4th Dist. Athens No. 01CA50, 2002-Ohio-2445, ¶ 41 (where a bag of marijuana, allegedly purchased from the defendant or someone else at his home, that had not been admitted into evidence was improperly submitted to the jury, trial court erred in denying motion for mistrial; "case * * * is one of those rare instances when curative instructions were insufficient to eliminate the prejudice inflicted by inflammatory evidence"). Marshall was represented by qualified, experienced trial counsel — among the top tier of criminal defense lawyers in the state. They did not request a curative instruction presumably

---

self-incrimination.

[13] Although there is nothing in the record that indicates that the trial judge discussed other alternatives with the parties, that is not to say she failed to consider whether there were less drastic alternatives prior to declaring a mistrial. The record reflects that the trial judge consulted with other judges prior to declaring a mistrial.

because they knew a curative instruction could not eliminate the potential harm.[14] This is not the type of case in which a curative instruction could be reasonably expected to provide sufficient protection against juror bias.

{¶32} In *State v. Patterson*, 188 Ohio App.3d 292, 2010-Ohio-2012, 935 N.E.2d 439 (2d Dist.), the Second District considered a similar issue. In that case, the appellate court considered whether a mistrial should have been declared where a statement from a non-testifying witness was inadvertently included in a stack of the state's exhibits given to the jury during its deliberations. *Id.* at ¶ 11. The statement, which was known to be false, recounted certain prejudicial statements allegedly made by the defendant. *Id.* at ¶ 19-20, 25, 80. After it discovered the statement, the jury examined and discussed it for 45 minutes before advising the court of their discovery. *Id.* at ¶ 22. After learning about the improperly submitted statement, the trial court questioned each juror separately regarding whether he or she had read and examined the statement, cautioned the jury that no testimony was offered regarding the statement and that its contents were unreliable, and instructed the jury to disregard the statement. *Id.* at ¶ 26. The trial court received assurances from the jurors that they would follow his instruction to disregard the exhibit and confirmed with the jurors that they had, in fact, disregarded the exhibit before announcing the jury's verdict. *Id.* at ¶ 26, 56-68. The Second District held that the instructions and assurances provided by the jury were not enough to

---

[14]Indeed, had defense counsel requested a curative instruction and been successful in obtaining such an instruction, it could have perhaps been grounds for a challenge based on ineffective assistance of counsel.

offset the prejudice from the improperly submitted statement and that the trial court should have, therefore, granted the defendant's motion for a mistrial:

> [T]he trial judge's instructions to the jurors were insufficient as a matter of law to cure the prejudicial effect of State's Exhibit 227B. * * * "We will not blindly assume that a jury is able to follow a * * * court's instruction to ignore the elephant in the deliberation room." *United States v. Morena*, 547 F.3d 191, 197 (3d Cir.2008). The fact that jurors believed that they could disregard State's Exhibit 227B does not convince us that they did so, given its inherent prejudice. * * * The decision on the motion for mistrial should have been made on a wholly objective basis and not on the questioning of individual jurors regarding their deliberative process. We are not willing to conclude that State's Exhibit 227B is something that can simply be erased from a juror's mind. * * *

*Id.* at ¶ 80.

{¶33} This case presented a unique how-to-unring-the-bell dilemma for the trial judge. The statement at issue detailed an admission by the defendant of his guilt to a longtime friend. What could be more exceptionally prejudicial to a defendant — other than perhaps a confession of guilt written in the defendant's own hand? As the United States District Court for the Northern District of Ohio aptly observed in ruling on Marshall's habeas petition, "[n]o juror could have been expected to put Haynes'[s] statement out of his/her mind." *Marshall,* 443 F.Supp.2d at 917. An experienced trial

judge knows when manifest necessity warrants a mistrial. The trial judge was in the courtroom throughout the trial, observing counsel, the witnesses, and the reactions of the jurors. "'Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.'" *Glover,* 35 Ohio St.3d at 20-21, 517 N.E.2d 900, quoting *Gori v. United States*, 367 U.S. 364, 368 (1961). In this case, we find that the trial court properly determined that the "bell" sounded by the submission of the statement of Tony Haynes to the jury could not be "unrung" to ensure a fair and just result.

**{¶34}** "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected * * *." *Washington*, 434 U.S. at 512, 98 S.Ct. 824, 54 L.Ed.2d 717. A review of the record demonstrates that the trial court acted reasonably and responsibly in determining a manifest necessity existed for the declaration of a mistrial in this case. The record reflects the exercise of sound discretion by the trial judge in determining both that (1) juror bias existed as a result of the submission of the inadmissible, prejudicial statement of Tony Haynes to the jury and (2) such bias could not have been cured but for the declaration of a mistrial.

**{¶35}** It is clear that manifest necessity supported the trial judge's declaration of a mistrial. However, we believe that this case is one in which declaration of a mistrial and the retrial of the defendant would have also been warranted to ensure that "the ends of public justice" would not "otherwise be defeated." *Glover*, 35 Ohio St.3d at 19, 517 N.E.2d 900; *Widner*, 68 Ohio St.2d at 189, 429 N.E.2d 1065; *Washington*, 434 U.S. at 505, 98 S.Ct. 824, 54 L.Ed.2d 717. "[T]he ends of public justice" has been "more precisely described" as "'the public's interest in fair trials designed to end in just judgments.'" *Widner* at 190, quoting *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. 834, 93 L.Ed. 974.

**{¶36}** In this case, evidence was presented that the store manager, Rocco Buccieri, in an attempt to prevent the commission of further felonies and to protect his two co-workers — a high school student and a delivery man who had been forced into a rear utility room — grabbed Marshall as he ordered Buccieri, at gunpoint, to open the safe at the front of the store. As a reward for his bravery, Buccieri was shot twice, first in his left side (where the bullet went through his left lung and lodged in his abdomen) and then, after Buccieri fell to the floor, a second shot was fired execution-style, into his head right above the left ear. The bullet went through his brain, causing massive brain damage.[15] In Marshall's first trial, after it heard and considered all of the evidence, the jury found Marshall guilty of capital murder (and of all the other offenses and specifications with

---

[15] There was evidence that three shots were fired at Buccieri. The second shot, missed Buccieri, hit the floor, ricocheted into an open door, and was found a couple of weeks later in an empty pizza box.

which he had been charged).   Due to an error in the penalty phase — that had nothing to due with the jury's verdict in the guilt phase of the trial — a new trial was ordered.

{¶37} As this case demonstrates, an error in a sentencing instruction, a police department overtime policy that prevents the state from presenting the testimony of a key witness,[16] and an allegedly overzealous prosecutor are not a recipe for a "fair trial designed to end" in a "just judgment" that serves the "ends of public justice" — not to mention justice for Buccieri, the co-workers terrorized in the Papa John's robbery, and their families.   Under the circumstances, the trial court's declaration of a mistrial and the retrial of the defendant were also  warranted to ensure that "the ends of public justice" would not "otherwise be defeated" in this case.

{¶38} For the reasons set forth above, we find that Marshall's right to be free from double jeopardy was not violated by the trial judge's declaration of a mistrial. Accordingly, we overrule Marshall's assignment of error.

{¶39} Marshall's convictions and the trial court's judgment are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[16]*See* fn. 2 *supra.*

_____
KENNETH A. ROCCO, JUDGE

SEAN C. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR