[Cite as *State v. Davis*, 2021-Ohio-2311.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                                 No. 109890

    v. :

MICHAEL DAVIS, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 8, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-619133-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christine M. Vacha, *for appellee.*

Jerome Emoff, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Michael Davis, appeals his convictions following a jury trial. Finding no merit to the appeal, we affirm.

{¶ 2} In 2017, Davis was named in an eight-count indictment charging him with attempted murder, aggravated robbery, discharge of a firearm, having weapons

while under disability, and two counts each of felonious assault and aggravated menacing. The charges stemmed from an altercation that occurred on East 137th Street and Kinsman Road in Cleveland, between Davis and Dion Watson ("Watson"), Ketara Jewell ("Jewell"), and Sharon Maddox ("Maddox"), where according to the state, Davis exited a vehicle with a gun drawn, and ultimately engaged in a physical confrontation with Watson, causing him serious injury. It was alleged that Davis discharged the firearm during the incident.

{¶ 3} A jury trial commenced in July 2018. However, after the jury was empaneled and the first witness testified, the trial court sua sponte declared a mistrial out of manifest necessity based on Davis's repeated protestations that he wanted to proceed pro se at trial.

{¶ 4} In January 2020, a second jury trial commenced where Davis represented himself. The jury found Davis not guilty of attempted murder and one count of felonious assault (use of a deadly weapon), but guilty of felonious assault (causing serious physical harm), aggravated robbery, discharge of a firearm, having weapons while under disability, and both counts of aggravated menacing. The trial court sentenced Davis to 24 years in prison.

{¶ 5} Davis now appeals, raising three assignments of error. Because Davis does not challenge on appeal the sufficiency or manifest weight of the evidence, this court will only set forth the facts as they pertain to each assignment of error.

## I. Mistrial

{¶ 6} In his first assignment of error, Davis contends that the trial court abused its discretion in sua sponte declaring a mistrial.

{¶ 7} Prior to the start of the July 16, 2018 jury trial, Davis expressed reservations about whether his trial attorneys had spent sufficient time with him to prepare for trial. During one of the exchanges with the trial court, Davis indicated that he wished to represent himself. (Tr. 22-24.) After a lengthy discussion between the court, Davis, and his attorneys, the court assured Davis that he was represented by competent and experienced attorneys who were prepared to go forward with trial.

{¶ 8} After the jury was empaneled and Watson testified, Davis addressed the court requesting to represent himself. (Tr. 415.) According to Davis, his attorney did not ask Watson the questions that he wanted her to ask and they had a conflict of interest. (Tr. 415-420.) The court engaged in a long colloquy with Davis, at first denying his request to proceed pro se because they were "thick into this right now." (Tr. 420.) Additional discussion occurred regarding the amount of time Davis's attorneys spent with him preparing for trial. (Tr. 422-428.) After further discussion regarding the interplay between what Davis wished his attorney had asked during examination and what was asked, and the rules of evidence, the court took a recess and spoke with counsel off the record. (Tr. 428-430.)

{¶ 9} The trial court then again discussed with Davis his concerns regarding his attorneys' representation. Davis assured the court that his mental health

diagnosis was not impacting his decision-making, and that he was fully compliant with his medications. (Tr. 431-436.) Thereafter, the court stated:

> Okay. So, with that being said, I think that at this point, the Court has no choice but to declare a mistrial in this case for the manifest necessity.
>
> The basis, of course, is that the defendant has exerted very clearly the idea that he wishes to represent himself in this matter. And that, frankly, there is a significant amount of discovery which has been reviewed by counsel only and would require the defendant certainly to, at the very least, review that information before proceeding.
>
> Additionally, while the Court has not gone through the entire colloquy with the defendant on self[-]representation, it's very clear that he is competent and of clear mind today and very affirmatively expressing his position. However, I do still have to go over that colloquy with you before we begin —

(Tr. 437.)

{¶ 10} The trial court then noted that that the state "strenuously object[ed] to the court granting a mistrial." (Tr. 438.) The court expressed its justification:

> And certainly I have taken into consideration the State's perspective, but in the interests of justice, the Court has to make decisions which are in the interests of justice.
>
> Therefore, strenuous objection is noted and I should also note that this is the second time in ten years that I've declared a mistrial, so it's not something that the Court either takes lightly or takes an aspersion to.
>
> I certainly have reviewed a number of cases along with the case law that is applicable to the decision that I have just made.

(Tr. 438.) The court again noted, in relevant part,

> So, this is a mistrial necessitated by the defendant just so that the record is clear.
>
> And once again, I am obviously significantly concerned about the timing of all of this and recognize that it is suspect from that perspective.

(Tr. 441.) Davis did not object at any time regarding the trial court's decision to declare a mistrial. On July 18, 2018, the trial court formally issued a journal entry ordering a mistrial, while noting the state's objection.

{¶ 11} On October 17, 2018, Davis appeared in court with newly appointed counsel, who advised the court that Davis still wished to represent himself. After a thorough colloquy, Davis unequivocally stated "[i]f I'm competent enough to stand trial, I should be competent enough to represent myself." (Tr. 456.) Out of concern, the trial court ordered Davis to undergo a competency evaluation at Northcoast Behavioral Health before allowing him to proceed without counsel. In November 2018, the court received a report from Northcoast indicating that Davis was uncooperative with the evaluation. As a result, the court ordered Davis to undergo further evaluation at Northcoast regarding competency.

{¶ 12} In December 2018, the court received a report from Northcoast opining that Davis was competent to stand trial and competent to waive his right to counsel. After the parties stipulated to the report, Davis once again unequivocally stated that he wished to represent himself. (Tr. 465.)

{¶ 13} In February 2019, the trial court engaged in an extensive discussion with Davis about his desire to represent himself. Following this discussion, the trial court engaged in the requisite Crim.R 44 advisements on waiving his right to counsel and proceeding pro se, and Davis executed the appropriate waiver. (Tr. 508, 541-542, 554, 571.)

{¶ 14} In July 2019, the trial court considered Davis's multiple motions to dismiss — none of which asked the court to dismiss the indictment based on double jeopardy grounds. During the motion hearing, the trial court further explained her justification for declaring a mistrial:

> I'm going to note for the record that we were, in fact, engaged in trial. We had selected a jury. In fact, we had gone through several days of jury selection and begun opening statements and the presentation of witnesses wherein Mr. Davis at the time seemed to feel uncomfortable and unhappy with the way that the proceedings were going.
>
> He appeared to the Court to be angry with [his attorneys], and at a time told the Court that he absolutely, unequivocally fired both of his counsel while we were in the middle of trial and was not going to accept them as his counsel anymore. And he made those motions partially in front of the jurors, so it was a rather tenuous situation.
>
> I did grant the defendant's — I did grant a motion for a mistrial at that point against the objection — over the objection of the State of Ohio. I should note that in 11 years as a Common Pleas Court Judge, I have only had two mistrials. This would be the second.

(Tr. 579-580.)

{¶ 15} The second jury trial began on January 27, 2020, without objection or any declaration that Davis's constitutional rights against double jeopardy were violated because of the retrial. Although Davis proceeded pro se, he had standby counsel assisting him with courtroom procedure.

{¶ 16} On appeal, Davis contends that the trial court abused its discretion when it assumed manifest necessity and declared a mistrial, thus violating his constitutional right against double jeopardy. He contends that neither he nor the state requested a mistrial and that his request to proceed pro se was untimely and,

thus, should not have been a basis for granting a mistrial. Davis's arguments are without merit.

{¶ 17} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense. *State v. Truhlar*, 8th Dist. Cuyahoga No. 103312, 2016-Ohio-5338, ¶ 33, citing *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Double Jeopardy Clause does not, however, bar re-prosecution in every case. *Truhlar* at ¶ 34. Generally, retrial is permitted whenever a mistrial is declared at the request of or with the consent of the defendant, or the trial court sua sponte declares a mistrial, unless the request is precipitated by prosecutorial misconduct intended to provoke a defendant into seeking a mistrial. *Id.*, citing *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 36-37; *State v. Bogan*, 8th Dist. Cuyahoga No. 106183, 2018-Ohio-4211, ¶ 22; *see also State v. Truhlar*, 8th Dist. Cuyahoga No. 105835, 2017-Ohio-9018, ¶ 7.

{¶ 18} In this case, there is no allegation of prosecutorial misconduct. And according to Davis, he did not request or consent to a mistrial and thus the court should not have declared a mistrial. Specifically, he directs this court to a single sentence wherein he told the court that his desire to represent himself was not "to postpone this or none of this because I believe the facts of this case will set me free." (Tr. 427.) Despite this isolated and out-of-context statement, we find that the record demonstrates that Davis's request to proceed pro se and his actions during the first

trial caused the mistrial. Moreover, Davis neither filed a motion to dismiss the charges on double jeopardy grounds nor asserted a violation of his Fifth Amendment protection against double jeopardy in the trial court. Accordingly, he has waived all but plain error and, arguably, he invited any error.

{¶ 19} Pursuant to Crim.R. 52(B), plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. To constitute plain error, there must be (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 20} Assuming that Davis did not consent to the mistrial, double jeopardy will not bar a retrial if (1) there was a manifest necessity or high degree of necessity for ordering a mistrial; or (2) the ends of public justice would otherwise be defeated. *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981), citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). "'Manifest necessity' means a 'high degree' of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was 'absolutely necessary' or that there was no other alternative but to declare a

mistrial." *State v. Marshall*, 2014-Ohio-4677, 22 N.E.3d 207, ¶ 21 (8th Dist.), citing *Washington* at 511.

> There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial: "[T]he manifest-necessity standard 'abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'"

*Marshall* at ¶ 22, quoting *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 27, quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

{¶ 21} What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, considering all the relevant circumstances. *Marshall* at *id*. This approach is "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial," *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988), but should be used with the "'greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Gunnell* at ¶ 26, quoting *U.S. v. Perez*, 22 U.S. 579, 580, 6 L.Ed. 165 (1824).

{¶ 22} In determining whether a mistrial is necessary, the trial court should (1) allow both parties to state their positions on the issue, (2) consider their competing interests, and (3) explore reasonable alternatives, if any, before declaring a mistrial. *Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, at ¶ 44. "A trial court must act 'rationally, responsibly, and deliberately' in determining whether to declare a mistrial." *Marshall* at ¶ 25, quoting *Gunnell* at ¶ 33.

{¶ 23} In this case, we find no abuse of discretion, and thus no plain error. The record reflects that prior to trial, Davis was concerned about proceeding with his attorneys and thus requested to represent himself. After trial commenced, Davis again expressed dissatisfaction with his attorneys, contending that they did not spend enough time with him preparing for trial, and did not ask the questions he wanted them to ask, and he felt that he could represent himself more effectively. The court later noted that some of these protestations and disruptions occurred in the presence of the jury. *See* tr. 579-580; 1508 (following Davis's testimony during the second trial, the court noted that Davis "fired [his attorney] in the middle of trial, claiming that [he] found her to be incompetent, and [he] did not like her representation of [him] at all. And [he] made it clear in front of the last jury that that is how [he] felt").

{¶ 24} Following a lengthy colloquy with Davis and counsel — both on and off the record — the trial court declared a mistrial, finding it to be a manifest necessity on the basis that Davis unequivocally wished to represent himself. Although the state objected and the trial court did not consider any alternatives to a mistrial on the record, this is not a case in which the parties were afforded no opportunity to state their respective positions or where an adequate alternative remedy was readily apparent, other than to deny Davis's request for self-representation and require him to proceed with current counsel, which of course the court could have done. However, based on the circumstances of the case and Davis's outward attitude toward his attorneys, we find no abuse of discretion by the trial

court. The record reflects sufficient justification to conclude that the court acted rationally, responsibly, and deliberately in its decision to grant Davis's motion to proceed pro se and ultimately declare a mistrial. We further find that the trial court's actions did not amount to such a manifest miscarriage of justice for this court to recognize plain error.

{¶ 25} Moreover, Davis arguably invited the error upon which he now relies on appeal. Under the invited error doctrine, a party is not entitled to take advantage of an alleged error that the party induced or invited the court to make. *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950 (1994). "[A] litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." *Lester v. Leuck*, 142 Ohio St. 91, 93, 50 N.E.2d 145 (1943). The doctrine precludes a litigant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273 (11th Cir.2003). The invited error doctrine has been applied in the context of motions for mistrials. *See State v. Osley*, 6th Dist. Lucas No. L-17-1025, 2018-Ohio-437, ¶ 21-26 (discussing cases related to defendants' outbursts during trial).

{¶ 26} In this case, even if we were to find that the trial court erred in declaring a mistrial, it is apparent that Davis's actions and assertions were the precipitating events that caused the mistrial; thus, it could be viewed as invited

error. The record demonstrates that Davis was unequivocal in his request to dismiss his attorneys during trial and represent himself. The court noted that some of his protestations occurred in the presence of the jury, which could have tainted their perspective and led to an unfair trial. Davis cannot take advantage of the error that he in fact induced. Accordingly, Davis's first assignment of error is overruled.

## II. Jury Instructions

{¶ 27} In his second and third assignments of error, Davis contends that the trial court erred in its instructions to the jury. Specially, he contends that a flight instruction was not appropriate and that the court should have instructed the jury on self-defense.

### A. Flight Instruction

{¶ 28} At the request of the state, the trial court gave the jury the following instruction on flight:

> Now, ladies and gentlemen of the jury, testimony has been admitted indicating the defendant fled the scene. You are instructed that the fact that the defendant fled the scene does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support the defendant engaged in such conduct, and if you decide the defendant was motivated by a consciousness of guilt, you may, but are not required to consider that evidence in deciding whether the defendant is guilty of any of the crimes charged. You alone will determine what weight, if any to give to this evidence.

(Tr. 1613.)

{¶ 29} The giving of jury instructions is typically within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, citing *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993). However, Davis failed to object to the trial court's decision to instruct the jury on flight and, therefore, has waived all but plain error on appeal. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990); *State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230; Crim.R. 52(B); Crim.R. 30(A) (failure to object to the trial court's jury instructions waives issue on appeal).

{¶ 30} An improper or erroneous jury instruction does not constitute plain error under Crim.R. 52(B) unless, but for the error, the outcome of the trial would clearly have been different. *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983). This court has repeatedly held that "'[a] mere departure from the scene of the crime is not to be confused with deliberate flight from the area in which the suspect is normally to be found.'" *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30, quoting *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420 (Sept. 30, 1997).

{¶ 31} In *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 48, and *State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638, ¶ 110, the court held that the defendant's conduct of leaving the scene of the crime did not warrant a flight instruction because there was no evidence of deliberate flight in the sense of evading police. *See also State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429 (flight instruction not warranted based on insufficient evidence).

{¶ 32} In this case, there was no evidence of Davis's deliberate flight in the sense of evading police. Nevertheless, the state requested a flight instruction, and the trial court granted the request. Despite this court's repeated decisions on when a flight instruction is proper and when it is not, the state continues to request the instruction and trial courts continue to grant this request when clearly the instruction is not appropriate and contrary to the controlling case law in the Eighth District. The misapplication of the flight instruction is extremely troubling to this court, and we strongly encourage that the flight instruction should only be requested and given when the facts of the case permit.

{¶ 33} Despite the trial court's error, we cannot say, nor has Davis demonstrated, that the error was prejudicial such that a manifest miscarriage of justice has occurred. Reviewing the instruction as a whole, it allowed the jury to reach its own conclusions on the issue of flight, including whether Davis actually fled the scene, and Davis's motivation for leaving the scene. Under similar circumstances, this court has declined to find plain error. *See, e.g., Jackson* and *Johnson.* We likewise decline to find plain error here. Davis's second assignment of error is overruled.

**B. Self-Defense**

{¶ 34} Davis requested that the trial court instruct the jury on self-defense. The state objected, contending that Davis's innocence defense or alternative theory that the firearm accidentally discharged were contrary to his claim of self-defense.

Following an extensive and thorough discussion, and a review of the relevant case law, the trial court denied Davis's request for a self-defense jury instruction.

{¶ 35} When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder. *State v. Stephens*, 2016-Ohio-384, 59 N.E.3d 612, ¶ 17 (8th Dist.), citing *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Trial courts should ordinarily give a requested jury instruction if it is a correct statement of law, if it is applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 42 (8th Dist.), citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240; *see also Goldfuss v. Davidson*, 79 Ohio St.3d 116, 124, 679 N.E.2d 1099 (1997). In deciding whether to give a self-defense instruction, the trial court must view the evidence in favor of the defendant, and the question of credibility is not to be considered. *Jacinto* at *id.*; *State v. Robinson*, 47 Ohio St.2d 103, 110-113, 351 N.E.2d 88 (1976).

{¶ 36} Davis contends that his testimony was sufficient to support a conclusion that he acted in self-defense in relation to Counts 3, 7, and 8 of the indictment. Count 3 charged Davis with felonious assault in violation of R.C.

2903.11(A)(1), which alleged that Davis caused or attempted to cause serious physical harm to Watson. The state claimed that Davis caused Watson actual injury, i.e., a bite to his arm and injury to his head requiring staples. Counts 7 and 8 each charged Davis with aggravated menacing in violation of R.C. 2903.21(A), alleging that Davis knowingly caused Watson and Jewell to believe that he would cause them serious physical harm. The state claimed that Watson and Jewell each feared for their safety when Davis exited the vehicle with a gun drawn and when the fight over the firearm ensued.

{¶ 37} At trial, Davis testified that he exited his friend's vehicle and walked in the direction where his other friend was waiting, which happened to be the same direction that Maddox was walking. Davis stated that Maddox reached into her purse, turned around, and pointed a gun at him. He stated that out of fear, he dropped his cell phone and cigar and placed his hands in the air. Davis testified that he threw his keys and money on the ground, which distracted Maddox, allowing him to grab her arm and take the gun from her. He said he placed it behind his back, but turned around when Watson yelled out. Davis stated that Watson charged at him and grabbed the gun. He stated that the two were tussling on the ground when the gun discharged. According to Davis, he stopped wrestling with Watson and attempted to diffuse the situation by stating they should just "move on." Davis testified that Watson then head-butted him, which caused him to become dizzy. He said he saw Watson and one of the other females assaulting his friend, but left out of fear because he was on parole. He denied that he threatened anyone with a gun,

fired the gun at anyone, or assaulted anyone. He claimed the gun discharged during the tussle with Watson.

{¶ 38} We find that the trial court did not abuse its discretion in denying Davis's request for a jury instruction on self-defense. A defendant claiming self-defense "concedes he had the purpose to commit the act, but asserts that he was justified in his actions." *State v. Talley*, 8th Dist. Cuyahoga No. 87143, 2006-Ohio-5322, ¶ 45. Self-defense "presumes intentional, willful use of force to repel force or escape force." *State v. Champion*, 109 Ohio St. 281, 286-87, 142 N.E. 141 (1924). "Thus, when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 54.

{¶ 39} In this case, Davis denied that he created the situation or committed any offense. Accordingly, a claim of self-defense is contradictory to his defense of actual innocence. *See State v. Kramer*, 7th Dist. Mahoning No. 01-C.A.-107, 2002-Ohio-4176, ¶ 53. Self-defense presumes that the facts of the crime, as alleged in the indictment or complaint, are true, but asserts that there are further facts that justify the defendant's actions and exempt him or her from liability. *State v. Poole*, 33 Ohio St.2d 18-20, 294 N.E.2d 888 (1973). Davis did not admit that he committed the offense of felonious assault or aggravated menacing; accordingly, the defense of self-defense was not available to him.

{¶ 40} Moreover, any claim that the gun accidentally discharged is also contrary to a theory of self-defense. *See State v. Johnson*, 10th Dist. Franklin No.

06AP-878, 2007-Ohio-2792, ¶42-43 (defendant's testimony that the firearm discharged as a result of a struggle for the firearm and not as a result of his intentional and willful act contradicted the application of self-defense). We note that the jury found Davis not guilty of attempted murder and felonious assault with a deadly weapon. Accordingly, insofar as the self-defense instruction was requested involving the discharge of the firearm, the denial of the instruction was not prejudicial. Davis's third assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_Kathleen Ann Keough_
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR