[Cite as *State v. Flitcraft*, 2024-Ohio-3146.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-L-113** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| STEPHEN R. FLITCRAFT, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 001230 |

**O P I N I O N**

Decided: August 19, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee* and *Adam M. Downing*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}   Stephen Flitcraft ("Appellant") appeals his convictions after being found guilty by jury trial on eight counts.  Appellant raises nine assignments of error in support of his appeal.  He asserts that the State did not present sufficient evidence to support his convictions, that his convictions were against the manifest weight of the evidence, a variety of evidentiary issues, and ineffective assistance of counsel claims.

{¶2}   For the following reasons, the lower court's judgment is affirmed.

## Factual and Procedural History

{¶3} On March 17, 2023, the Lake County Grand Jury indicted Appellant on eight counts, alleging Appellant, on October 29, 2022, committed: (1) Attempted Murder, a first-degree felony in violation of R.C. 2923.02; (2) two counts of Aggravated Robbery, first-degree felonies in violation of R.C. 2911.01(A)(1)&(3); (3) Robbery, a second-degree felony in violation of R.C. 2911.02(A)(1) with a Repeat Violent Offender specification pursuant to R.C. 2929.14(B)(2)(a); and (4) four counts of Felonious Assault, second-degree felonies in violation of R.C. 2903.11(A)(2).

{¶4} On October 17, 2023, a jury trial commenced.

{¶5} Jeffery Spooner ("Spooner") testified as a victim of the charged offenses. He said that he had dated Appellant's sister, Cynthia Flitcraft, "on and off" for approximately two years. He said that approximately two weeks before the incident, Appellant had told him that "he was going to gut me like a fish if I hurt Cindy's feelings," but that he did not perceive the statement as a true threat at the time.

{¶6} The week before the incident, Cynthia told Spooner that she needed "some time" away from him. Spooner testified that on October 29, 2022, he texted Cynthia and told her he would "stop by" her residence that day to talk to her. He said that he arrived at seven or eight in the evening. When he arrived, Cynthia and Appellant were working in the garden. Spooner said that Appellant suggested they all go to a bar, so Spooner drove them in his Jeep Grand Cherokee to a local bar, Toth's Too. After approximately forty-five minutes, they left the bar and decided to go to another bar, Witz End. Spooner said that Cynthia asked him to park at a certain spot.

2

**{¶7}** He described: "I pulled into that spot and as I'm talking to her, she kinda looks up and I'm like 'What?' And [Appellant's] in my backseat hovering over me. I mean he stabbed me three times before I even realized what was going on." Spooner testified that he had tried to get out of the vehicle, but Cynthia was "leaning against the door." Spooner said that as he was being stabbed, Appellant told him that "he was going to f****** kill me." Spooner said that as he was "dodging" Appellant in the vehicle, Appellant stabbed Cynthia "a few times." Spooner told Appellant: "Dude, you're stabbing your sister too." After that, Appellant "calmed down," stopped stabbing him, left the vehicle, and cleaned the knife. Spooner testified that he was stabbed in his "heart, liver, just all over myself."

**{¶8}** Spooner explained that Appellant then reentered the vehicle and asked him to drive. Spooner drove them "up the road" to "the end of Garden Road and Lakeshore" Blvd. Appellant and Cynthia exited the vehicle, and Appellant told Spooner "We are going to need your keys and wallet." Spooner complied because he "wanted [Appellant] away from me." Spooner said he then drove his vehicle to Cynthia's driveway.[1] Spooner testified that he was "in and out of consciousness," but that he remembers an officer approaching his vehicle. Spooner told the officer "[Appellant] did it" and then "passed out."

**{¶9}** Todd Van Allen testified that he had been dating Cynthia Flitcraft "on and off" for nine years, but, at the time of the incident, they were friends. He said that at approximately 11:30 p.m. on the evening of October 29, 2022, he saw Cynthia standing

---

1. Spooner explained that he was able to drive away without his keys because his vehicle is a "push start" vehicle and will continue to run for a certain amount of time without the keys in the vehicle.

Case No. 2023-L-113

outside his front door.  He described that she was intoxicated, "pale as a ghost," there was "blood profusely dripping down her arm," her clothes were "saturated" with blood, and she had marks on her arms that looked like she had been stabbed.  Mr. Van Allen asked Cynthia what had caused her injuries and she "mumbled something about a car accident."  He said that he did not believe her injuries were consistent with being in a car accident.  He testified that Cynthia was in the bathroom and became non-responsive, so he called 9-1-1.  Responding officers asked him where she resided, and he told them her address.  He testified that while the officers questioned Cynthia at his residence, the officers arrived at Cynthia's residence on Garden Road and that's when "all hell broke loose" and the officers arrested her.

{¶10}  Sergeant Bradley Impala testified that he began investigating a "possible traffic incident" reported by Cynthia Flitcraft on October 29, 2022, at 11:48 p.m.  Sergeant Impala arrived at Garden Road to look for signs of a possible car crash.  He observed a "jeep with its lights on running close to the road."  He initially left the area, but returned to the jeep when he learned through a dispatch call that it was parked at Cynthia Flitcraft's residence.  Sergeant Impala approached the passenger side of the vehicle and saw Spooner in the driver's seat, who appeared "unconscious," "sweating profusely," with blood on himself and his clothes.  Sergeant Impala "shook" Spooner and he regained consciousness long enough to tell the Sergeant that he had been stabbed.  Sergeant Impala called for an ambulance to arrive.  Once Spooner was in the ambulance, he again regained consciousness and told Sergeant Impala that Appellant had stabbed him.  Sergeant Impala notified the police department that Appellant was a possible suspect.  He testified that he learned on October 30, 2022, that Appellant had been found and was

4

in police custody between 4:00 a.m. and 4:30 a.m. Sergeant Impala went to where Appellant was in custody and transported him to jail. Sergeant Impala said that Appellant appeared intoxicated and stated that he had drunk "more than normal."

{¶11} Lieutenant John Begovic testified that he helped investigate the incident. He testified that he collected the jeans and sweatshirt worn by Appellant when he was arrested. Lieutenant Begovic said that there were minor blood spots on both articles of clothing. He said that one blood spot on the sweatshirt appeared as if someone had tried cleaning the blood off. Lieutenant Begovic also testified to a phone call Appellant had made from jail on October 30, 2022, to an unknown person. During the phone call, Appellant stated that he did not remember anything from the night before, but that he "apologizes" if he stabbed Spooner.

{¶12} Cynthia Flitcraft testified as the court's witness.[2] Cynthia testified that on October 29, 2022, she went to Toth's Too to drink with Appellant and Spooner. But, she said that she did not remember anything after being at the bar. Cynthia said that the next thing she remembered from that night was walking to Todd Van Allen's residence.

{¶13} During her testimony, the State asked Cynthia if, in mid-October 2022, Appellant and Spooner had almost fought in her backyard. She replied that she "wasn't aware of that." The State then asked her if she recalled testifying to the event under oath during her grand jury testimony. Cynthia admitted that she gave the testimony. The State also asked Cynthia if she remembered telling the grand jury that she "had a feeling that

---

2. Prior to trial, the State moved the court to call Cynthia Flitcraft as the court's witness. It argued that the State was unsure whether or not her testimony would be helpful to the State's case because they did not know what she would testify to, and she was "aligned" with Appellant. The State therefore argued that it was appropriate for Cynthia to be called as the court's witness. The court granted the motion.

5

Case No. 2023-L-113

something happened in front of Osborne Park." She replied that she did. The State then asked if she remembered telling the grand jury that she had a feeling something had happened in Spooner's vehicle. She replied that she did not remember giving the testimony because she has a "poor" memory. The State next asked if she remembered telling the grand jury that they "stopped at the stoplight in front of Osborne Park." She replied that she did not remember giving the testimony. The State asked Cynthia if she remembered telling the grand jury that she thought she received her injuries from "trying to block something." She replied that she did not remember giving the testimony.

{¶14} Detective David Burrington testified that he interviewed Appellant at 9:30 a.m. on October 30, 2022. He said that he did not immediately interview Appellant upon arrest because Appellant was intoxicated. Detective Burrington stated that Appellant had a scratch on his face and his right hand was swollen with red dots on it.

{¶15} The State moved to admit the recorded interview at trial and play the video for the jury. The defense did not object. Before the hour and forty-eight minute video played, the court instructed the jury that portions of the video had been redacted because they were not relevant to the proceedings.[3]

{¶16} While the video played, the court paused the video and asked counsel to approach the bench. The court asked how much longer until the video was over, and the State replied, "fourteen minutes." The court next asked if a redacted version had been provided to defense counsel. Counsel replied that it had. The court notified counsel that they had "missed" a "couple things." Specifically, the court pointed to an instance where

---

3. It was revealed in conversations between the court and counsel, outside of the jury's presence, that the video was redacted to remove any statements Appellant had made about his prior convictions.

the statement "right before he went in" was said.  The court also noted at least two instances where Appellant said "I've always admit [sic] to everything I've done.  I always have."  The court told counsel that further redactions would be needed before the transcript is given to the jury for deliberation.

{¶17}  Outside of the jury's presence, the State asked the court if it needed to instruct the jury not to consider the portions of the recorded interview where the statements had been made that needed to be redacted.  The court allowed defense counsel to make the decision.  Defense counsel declined, stating that he did not want to bring attention to the statements.  The court agreed and explained that it did not stop the video when the statements were made because it did not want to alarm the jury that "something happened that shouldn't have happened."

{¶18}  The State rested its case.  The defense moved for dismissal under Crim.R. 29.  The court denied the motion.  The defense did not present any evidence and rested its case.  The defense renewed its Crim.R. 29 motion.  The court again denied the motion.  The jury entered deliberations and found Appellant guilty on all counts.

{¶19}  On November 3, 2023, the court held a sentencing hearing.  It sentenced Appellant to mandatory terms of imprisonment on each count to be served consecutively for an aggregate minimum term of 36 years and a maximum term of 41.5 years.

{¶20}  Appellant timely appealed and raises nine assignments of error.

### Law and Analysis

{¶21}  **First assignment of error: "The trial court erred in entering Aggravated Robbery convictions absent sufficient evidence."**

7

**{¶22}** "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶23}** When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

**{¶24}** Appellant specifically contends that the State did not present sufficient evidence to convict him on Aggravated Robbery in violation of R.C. 2911.01(A)(1) and 2911.01(A)(3).

**{¶25}** R.C. 2911.01(A)(1) provides: "No person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall . . . Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

**{¶26}** R.C. 2911.01(A)(3) provides: "No person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall . . . Inflict, or attempt to inflict, serious physical harm on another."

8

**{¶27}** The Ohio Supreme Court has held: "For purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a [deadly weapon] . . ." *State v. Vondenberg*, 61 Ohio St.2d 285 (1980), syllabus. "It is not necessary that the defendant had actually displayed the weapon in order to establish that he had possessed one." *State v. Knight*, 2004-Ohio-1941, ¶ 17 (2d Dist.). Whether or not the State has presented sufficient evidence of the actual possession of a deadly weapon is judged based on the totality of the circumstances. *Id.,* citing *State v. Green*, 117 Ohio App.3d 644 (1st Dist. 1996). "The factfinder may infer that the defendant possessed a deadly weapon based on his words and conduct." *Id.* at ¶ 16.

**{¶28}** Appellant argues that there was not sufficient evidence to convict him because the theft offense occurred after Spooner had been stabbed and drove his vehicle to a new location.

**{¶29}** Under R.C. 2911.01(A)(1), there was sufficient evidence for a jury to find that Appellant committed a theft offense (taking Spooner's wallet and keys) while having a deadly weapon (the knife) in his control and while either using the knife or indicating that he possessed it. There was circumstantial evidence from which a reasonable jury could infer, through Appellant's conduct just moments prior, that Appellant possessed the knife. Appellant's actions indicated that he possessed it (and used it) when he stabbed Spooner. Spooner testified Appellant stabbed him in the car. Spooner drove the vehicle at Appellant's direction "up the street" before he surrendered his wallet and keys to Appellant. However, there was no evidence to counter the reasonable inference that Appellant still possessed the knife. Neither Spooner nor Cynthia testified that Appellant

9

discarded the weapon. Spooner only saw Appellant clean the knife. Spooner testified that he gave Appellant his wallet and keys because he wanted Appellant "away from him" since Appellant had stabbed him. Appellant had used the knife; and there was no evidence that he had dispossessed himself of it prior to demanding Spooner's wallet and keys. A reasonable jury could infer he indicated that he possessed a deadly weapon or at least possessed one at the time of the offense.

{¶30} In regard to R.C. 2911.01(A)(3), there was sufficient evidence for a jury to find that Appellant committed a theft offense while inflicting serious physical harm on Spooner. Appellant again argues that the stabbing occurred "well prior" to the theft offense. But, the evidence demonstrates that the stabbing and the theft occurred within minutes of one another. The surveillance video from the Witz End parking lot (where Spooner asserts he was stabbed) shows Spooner's jeep leaving at 11:15 p.m. Another surveillance video shows Spooner's jeep arriving at Garden Road at 11:18 p.m. With only minutes (at the most) in between the stabbing and the theft, a jury could find there was sufficient evidence that the events were a continuous sequence of events.

{¶31} The State also presented evidence that contradicted Spooner's testimony that he was stabbed in the Witz End parking lot, indicating that it may have happened after they left the parking lot when Appellant committed the theft. Lieutenant Begovic testified that he had searched the parking lots of both bars on October 30, 2022, to see if there was any evidence of the stabbing. He noted that it was "significant" that there was not any blood found at either parking lot. Lieutenant Begovic opined that the stabbing occurred "somewhere else." Courtney Eggers testified that on October 29, 2022, she was walking on Lakeshore Blvd. past J.T.'s diner, which the evidence showed was near

10

the intersection of Lakeshore Blvd. and Garden Road at approximately 11:15-11:20 p.m., when she heard someone screaming. Notably, Lakeshore Blvd. is where Spooner stated that Appellant demanded, and took, his keys and wallet.

{¶32} Viewing the evidence in a light most favorable to the prosecution, a reasonable jury could have found beyond a reasonable doubt that the State had proven each element of the crimes.

{¶33} Appellant's first assignment of error is without merit.

{¶34} **Second assignment of error: "The trial court erred in entering convictions against [Appellant] which were against the manifest weight of the evidence."**

{¶35} "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered*." In re Z.C.,*2023-Ohio-4703, ¶ 14. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 2021-Ohio-4258, ¶ 22 (11th Dist.) quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶36} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [fact finder] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in

11

weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶37}** The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.*, quoting *Antill* at 67.

**{¶38}** "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175 (1st Dist. 1983).

**{¶39}** Under his second assignment of error, Appellant argues that his convictions were against the manifest weight of the evidence only because, he asserts, the stabbing was not a voluntary act because he was intoxicated.

**{¶40}** R.C. 2901.21(E) provides: "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged."

**{¶41}** Involuntary acts are defined as "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition." R.C. 2901.21(D)(2).

**{¶42}** Appellant's sole argument is that his stabbing Spooner was not done voluntarily because his intoxication rendered him "unconscious." Yet, there is nothing in

12

the record to support that Appellant was unconscious. Appellant argues that he did not remember stabbing Spooner. But, the record demonstrates otherwise. Appellant's video recorded interview shows that he clearly remembered the details of the night until he stabbed Spooner. Spooner's testimony did not suggest that Appellant was unconscious, but that he "calmed down" after realizing he had also stabbed Cynthia.

{¶43} There is also evidence that Appellant was not unconscious minutes before he stabbed Spooner. Gina Margroff, the bartender who served Appellant at Toth's Too, testified that he entered the bar at "roughly" 10:30 p.m. on October 29, 2022, with Cynthia and Spooner. She said that when they left, no one appeared any more intoxicated than when they entered, "or walking or tripping. They weren't belligerent. Nothing of that nature to me." Margroff testified that they left between 11:00 p.m. and 11:15 p.m. There is surveillance video from Witz End and Garden Rd. to suggest that Spooner had been stabbed between 11:15 p.m. and 11:18 p.m. It is not reasonable to infer the Appellant could have become so intoxicated between leaving the bar and stabbing Spooner as to render himself unconscious.

{¶44} The manifest weight of the evidence supports a reasonable jury finding that Appellant was not unconscious when he stabbed Spooner.

{¶45} Appellant's second assignment of error is without merit.

{¶46} **Third assignment of error: "The trial court erred and entered a sentence contrary to law where a mandatory sentence was imposed on the Felonious Assault conviction prejudicing [Appellant] by denying him any future opportunity to file for judicial release."**

{¶47} R.C. 2953.08 governs our standard of review and provides:

13

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶48} Appellant argues that his sentence was contrary to law because it imposed a mandatory prison term pursuant to R.C. 2929.13(F)(6). Appellant asserts that R.C. 2929.13(F)(4) exclusively allows a court to issue a mandatory prison term for Felonious Assault pursuant to R.C. 2903.11.

{¶49} R.C. 2929.13(F) provides in relevant part,

Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms . . . for any of the following offenses:

(4) A felony violation of section 2903.04, 2903.06, 2903.08, 2903.11, 2903.12, 2903.13, 2905.32, 2907.07, 2921.321, or 2923.132 of the Revised Code if the section requires the imposition of a prison term;

(6) Any offense that is a first or second degree felony and that is not set forth in division (F)(1), (2), (3), or (4) of this section, if the offender previously was convicted of or pleaded guilty to aggravated murder, murder, any first or second degree felony, or an offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to one of those offenses[.]

{¶50} Appellant argues that the trial court must sentence a defendant to a mandatory prison sentence for Felonious Assault only under R.C. 2903.11. Appellant

14

Case No. 2023-L-113

correctly observes that this court has not ruled on the interplay between R.C. 2929.13(F)(4) and (6). However, other appellate courts in this State have and their analyses are persuasive, and we adopt them.

{¶51} In *State v. Clark*, 2006-Ohio-6068 (2d Dist.), the Second District Court of Appeals directly addressed this question, holding:

> R.C. 2903.11(D) requires a mandatory sentence for felonious assault in a particular circumstance, and R.C. 2929.13(F)(4) recognizes that fact. R.C. 2929.13(F)(6) requires a mandatory sentence in an additional circumstance and is not inconsistent with R.C. 2929.13(F)(4). In our view, the legislature's recognition in the felonious assault statute of one circumstance in which a mandatory sentence was appropriate-where a peace officer is seriously injured, even on a first offense-and its recognition of additional circumstances under the sentencing statute, such as for repeat serious offenders, does not create a conflict. Thus, the trial court properly imposed a mandatory sentence under R.C. 2929.13(F)(6) based on the commission of a previous first or second degree felony.

{¶52} More recently, in *State v. Paskins*, 2022-Ohio-4024 (5th Dist.) and *State v. Spaulding*, 2017-Ohio-7993 (6th Dist.), the Fifth and Sixth District Appellate Courts also have held that a trial court is required to sentence a defendant to a mandatory prison term for Felonious Assault if R.C. 2929.13(F)(6) applies.

{¶53} It is not contested that Appellant had been convicted previously of first and second degree felonies. For the foregoing reasons, the court properly sentenced Appellant to a mandatory prison term under R.C. 2929.13(F)(6).

{¶54} Appellant's third assignment of error is without merit.

{¶55} **Fourth assignment of error: "The trial court erred and prejudiced [Appellant] when it granted the State's motion and called Cynthia Flitcraft as a court witness."**

15

**{¶56}** Appellant asserts two arguments under this assignment. First, he argues that the trial court erred in calling Cynthia as the court's witness. He also contends that trial counsel rendered ineffective assistance when he did not oppose the State's motion to call Cynthia as the court's witness.

**{¶57}** Because Appellant did not oppose the motion below, we review his first argument for plain error.

**{¶58}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights." *State v. Obermiller*, 2016-Ohio-1594, ¶ 62. The requirement that the error must have affected substantial rights means that the error must have affected the outcome of trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "We take '[n]otice of plain error . . . with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Obermiller* at ¶ 62, quoting *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

**{¶59}** Pursuant to Evid.R. 614(A): "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

**{¶60}** "The court's power to call a witness pursuant to Evid.R. 614(A) is inherent, and should be exercised in fulfillment of the court's fundamental obligation to assist in arriving at the truth." *State v. Brown*, 2015-Ohio-950, ¶ 15 (11th Dist.), citing *State v. Davis*, 1993 WL 548033 (11th Dist. Dec. 10, 1993), citing Evid.R. 614(A), Staff Notes. "The decision whether to call individuals as witnesses of the court is a matter within the

16

trial court's discretion."  *Id.*, citing *State v. Knapp*, 2012-Ohio-2354, ¶ 69 (11th Dist.).

Accordingly, "'a trial court does not abuse its discretion in calling a witness as a court's

witness when the witness's testimony would be beneficial to ascertaining the truth of the

matter and there is some indication that the witness's trial testimony will contradict a prior

statement made to police."  *Id.*, citing *State v. Schultz*, 2005-Ohio-345, ¶ 29 (11th Dist.).

{¶61}  This court has previously recognized that it may be the most prudent course

to actually determine whether a witness is varying materially from prior statements before

calling her as a court's witness for impeachment purposes.  *Knapp*, at ¶ 72.  Still, Evid.R.

614 does not mandate this method of calling a court's witness.  And, "[t]his procedure is

not necessary where the trial judge is reasonably justified in believing that the calling of

the person as a court witness would benefit the jury in performing its fact-finding

responsibilities."  *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 158 (1980).  Accordingly,

"Evid.R. 614(A) does not require a witness to be shown hostile or shown that she will

testify inconsistently prior to a court calling that witness."  *State v. Brown*, 2015-Ohio-950,

¶ 19 (11th Dist.).

{¶62}  In this case, the State moved for Cynthia to be called as the court's witness

because the State believed she would be aligned with Appellant's defense, and she may

have testified contrary to the State's case.  As the only witness to the October 29, 2022

events other than Spooner, Cynthia's testimony was fundamental to assist the trier of fact

in arriving at the truth.

{¶63}  Appellant contends that he was prejudiced by her testimony because it

allowed the State to ask Cynthia leading questions, to many of which she replied that she

did not remember some things or having previously testifying about them.  We do not find

17

this argument persuasive. Cynthia's responses regarding her lack of memory did not incriminate Appellant. In fact, Cynthia's testimony supported Appellant's character, as she testified that she did not believe he had stabbed her or Spooner.

{¶64} The trial's outcome would not have changed if she had not testified. Her answers did not provide any additional support for the State's case. In fact, her testimony proved nothing. She never was asked to confirm or deny the truth of her grand jury testimony. She simply said she did not remember giving most of it. Moreover, Spooner's testimony already had detailed the October 29 events.

{¶65} Importantly, Evid.R. 614(A) grants the court inherent authority to call a court's witness. Appellant has not demonstrated that the court erred and abused its discretion in calling Cynthia as the court's witness.

{¶66} We next consider whether or not trial counsel rendered ineffective assistance.

{¶67} "'In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668[.]" *State v. Woodard*, 2010-Ohio-2949, ¶ 11 (11th Dist.). "First, it must be determined that counsel's performance fell below an objective standard of reasonableness." *Id.* "Second, it must be shown that prejudice resulted." *Id.* "Prejudice exists when 'the result of the trial would have been different' but for counsel's ineffectiveness.'" *Id.*, quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph 3 of the syllabus.

{¶68} In applying the foregoing standard, a reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional

18

representation. *Strickland* at 689. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995).

{¶69} Having found that Appellant did not establish prejudice from Cynthia's being called as the court's witness, Appellant's argument that his trial counsel was ineffective for failing to oppose the motion similarly fails.

{¶70} Appellant's fourth assignment of error is without merit.

{¶71} **Fifth assignment of error: "[Appellant] suffered prejudice from the prosecution's improperly questioning court witness [Cynthia Flitcraft] by implying alleged grand jury statements to be considered as evidentiary testimony."**

{¶72} Appellant raises two arguments under this assignment. First, he argues that the trial court erred in permitting the State to question Cynthia on her grand jury statements. He also contends that trial counsel rendered ineffective assistance for failing to object.

{¶73} Appellant did not object below. Thus, we review his first argument for plain error.

{¶74} Appellant argues plain error because the trial court allowed the State to read the statements aloud without first letting the witness read them and because the questions were asked for the purpose of reading the statements into evidence instead of refreshing Cynthia's recollection. We disagree for the following reasons.

{¶75} First, we do not know why, or to what end, the State proceeded as it did. Second, it does not matter. The answers the State's questions elicited did nothing to prove any element of the alleged offenses, and Spooner's testimony had provided ample

19

(and unrebutted) evidence for those. Appellant has not shown that the trial court committed plain error.

**{¶76}** At most, if the court erred, it was harmless in this case because there was other sufficient evidence on which a jury could find Appellant guilty. Importantly, Spooner had already testified in detail to the events before Cynthia testified. The substance of the questions did not reveal new information to the jury, nor did Cynthia's responses substantiate their truthfulness. Moreover, the court instructed the jury that "[e]vidence is all the testimony received from the witnesses . . ." It did not instruct the jury that questions asked to witnesses were considered evidence.

**{¶77}** Having found that Appellant did not establish that the trial's outcome would have been different, Appellant's argument that his trial counsel was ineffective for failing to object to the questions similarly fails.

**{¶78}** Appellant's fifth assignment of error is without merit.

**{¶79} Sixth assignment of error: "Admission of prior bad acts evidence and failure to declare a mistrial."**

**{¶80}** Under his sixth assignment of error, Appellant argues that the court erred in not declaring a mistrial when certain statements regarding Appellant's prior convictions were played to the jury through his recorded interview. He also argues that trial counsel was ineffective for failing to move for a mistrial.

**{¶81}** Appellant did not object at trial. We therefore review for plain error.

**{¶82}** The decision to deny or grant a motion for mistrial lies within the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). "A mistrial should be declared only when the ends of justice so require and 'a fair trial is no longer

20

possible.'" *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). If a mistrial is based on erroneously admitted evidence, that evidence should be "'of an exceptionally prejudicial character such that its withdrawal from consideration by the jury cannot be expected to remove the harm.'" *State v. Marshall*, 2014-Ohio-4677, ¶ 29 (8th Dist.), *quoting United States v. Carr*, 5 F.3d 986, 993 (6th Cir. 1993).

{¶83} Evid.R. 404(B) provides: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "This type of evidence is commonly referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *State v. Hartman*, 2020-Ohio-4440, ¶ 21, citing *State v. Curry*, 43 Ohio St.2d 66, 68 (1975).

{¶84} "While it is generally true that deference is given to trial counsel's tactical decisions, evidence of other crimes that comes before the jury due to defense counsel's neglect, ignorance, or disregard of key facts or defendant's rights—and that bears no reasonable relationship to a legitimate trial strategy—can be sufficient to render counsel's performance deficient." *State v. J.J.S.*, 2024-Ohio-2645, ¶ 31 (10th Dist.).

{¶85} It is uncontested in this case that any statements relating to Appellant's prior convictions were supposed to be redacted from the recorded interview shown to the jury. The statements at issue are: (1) one instance in which a person referred to Appellant and said "right before he went in"; and (2) at least two instances where Appellant said "I've always admit [sic] to everything I've done. I always have."

{¶86} These statements are not "extremely prejudicial." No details on his convictions were revealed in the video. Moreover, the court noted to counsel that it

21

amounted to "two seconds" of an almost two hour video. The court, in its discretion, decided to not draw the jury's attention to the statements. There is also nothing in the record to demonstrate that a jury would hear those statements and use it to prove Appellant acted in accordance with his prior convictions.

{¶87} Appellant has not demonstrated that the court committed plain error, and that the trial's outcome would have been different, if the statements were redacted.

{¶88} Trial counsel's decision to not move for a mistrial was trial strategy. Trial counsel expressed this when the court asked if he wanted the court to instruct the jury to disregard the statements. Trial counsel replied that he did not want to draw attention to the statements. Moreover, Appellant did not demonstrate that he was prejudiced or that the trial outcome would have been different.

{¶89} Appellant's sixth assignment of error is without merit.

{¶90} **Seventh assignment of error: "[Appellant] was prejudiced where the defense(s) of involuntary act(s) and blackout were not raised/argued and the jury was not instructed on involuntary acts/blackout or to consider it in reaching its verdict."**

{¶91} "A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 2015-Ohio-492, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State*

22

*v. Adams*, 2015-Ohio-3954, ¶ 240, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991).

**{¶92}** Involuntary acts are "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition . . .." R.C. 2901.21(F)(2).

**{¶93}** The blackout defense applies where a person commits an act while unconscious, as in a blackout, due to disease, injury, sleep, or heart failure. *State v. Blanton, 2023-Ohio-89*, ¶ 38 (2d Dist.) citing Ohio Jury Instructions, CR Section 417.07, paragraph one. "Under those circumstances, such act is not a criminal offense even though it would be a crime if such act were the product of a person's will or volition." *Id*. Thus, the blackout defense requires proof that the defendant was "unconscious" and acted involuntarily during the offense. *Id.* at ¶ 35-40 citing *State v. Cutlip*, 2001 WL 687493 (11th Dist. June 15, 2001). "Blackout or unconsciousness is a defense only where such condition is involuntary[.]" *Id.* at * 7.

**{¶94}** To obtain a jury instruction on the blackout defense, a defendant must present evidence that he committed the offense while he was unconscious, as in a blackout due to disease or injury. *State v. Nicholson*, 2024-Ohio-604, reconsideration denied, 2024-Ohio-1577, ¶ 334, citing *State v. Ireland*, 2018-Ohio-4494, ¶ 1, 4, 6, 24-26.

**{¶95}** Appellant asserts that trial counsel was ineffective for failing to raise the defenses of involuntary acts and blackout, and for failing to request jury instructions on those defenses.

**{¶96}** Appellant has not demonstrated that he was entitled to the defenses or jury instructions of involuntary acts or blackout. Specifically, he has not shown that his bodily

23

movements were not a product of his own volition. The facts here are important. Appellant stabbed Spooner while threatening that he was going to kill him. He then calmed down and cleaned off the knife. There is nothing in the record to suggest these acts were not on Appellant's own volition.

{¶97} Appellant also is not entitled to a blackout defense or jury instruction because any unconsciousness he claims would have been caused by his own voluntary intoxication. Likewise, we analyzed under Appellant's second assignment of error that he has not shown that he was unconscious when the incident occurred. Even if we were to accept Appellant's argument, his unconsciousness was not caused by disease, injury, sleep, or heart failure.

{¶98} Appellant has not demonstrated that trial counsel was ineffective for failing to raise the defenses or for failing to request the jury instructions.

{¶99} Appellant's seventh assignment of error is without merit.

{¶100} **Eighth assignment of error: "[Appellant] was prejudiced by the jury instruction and State's comments that voluntary intoxication may not be considered in determining if [he] intended the attempted murder."**

{¶101} Appellant specifically contends that the court's jury instruction "that voluntary intoxication may not be considered by the jury in determining if [Appellant] acted purposely was in error and defense counsel was required to object." Appellant did not object below. Thus, we review for plain error.

{¶102} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds

24

might reach the conclusion sought by the requested instruction." *Adams*, 2015-Ohio-3954 at ¶ 240, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d at 591.

{¶103} As noted in our discussion of appellant's second assignment of error, R.C. 2901.21(E) provides: "Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged."

{¶104} The court in this case provided the following instruction to the jury:

> [I]n determining the existence of a mental state that is an element of any of the crimes defined above, voluntary intoxication may not be taken into consideration. Evidence that a person was voluntarily intoxicated, may be admissible, however, to show whether or not the person was physically capable of performing the acts with which the person is charged. Intoxication is not an excuse for an offense. However, evidence of intoxication has been admitted for the purpose of showing that the defendant was so intoxicated that he/she was incapable of performing the act with which he/she has been charged.

{¶105} The jury instruction provided was proper because it was a correct statement of the law. The jury instruction adequately tracks R.C. 2901.21(E). Appellant was not prejudiced by the court's instructing the jury that "in determining the existence of a mental state that is an element of any of the crimes defined above, voluntary intoxication may not be taken into consideration." That is the law that the jury needed to assist in its deliberation.

{¶106} Appellant has not shown that trial counsel rendered ineffective assistance.

25

{¶107} Appellant's eighth assignment of error is without merit.

{¶108} **Ninth assignment of error: "[Appellant] was prejudict [sic] by the cumulative failure of the trial court and trial counsel which resulted in improper convictions."**

{¶109} Appellant argues under his final assignment of error: "If this Court has found that the prejudice caused on any single error was not enough to warrant vacating the convictions it should find the totality of the errors prejudicial and vacate the convictions on the basis of cumulative error."

{¶110} This argument is without merit. We have analyzed each assignment of error and have found that Appellant's arguments were without merit. We decline to accept Appellant's "cumulative error" argument as we did not find reversible error in our analyses.

{¶111} Appellant's ninth assignment of error is without merit.

{¶112} The judgment of the Lake County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.

26

Case No. 2023-L-113